[Cite as *Strongsville v. Johnson*, 2017-Ohio-7066.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104577

# CITY OF STRONGSVILLE

PLAINTIFF-APPELLEE

vs.

# GERMANEY C. JOHNSON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART,
## AND REMANDED

Criminal Appeal from the
Berea Municipal Court
Case Nos. 14 CRB 00232 and 14 TRD 00718

**BEFORE:** Stewart, J., Keough, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** August 3, 2017

**FOR APPELLANT**

Germaney C. Johnson, pro se
8311 Indianapolis Avenue, 1011
Columbus, OH 43240

**ATTORNEY FOR APPELLEE**

George F. Lonjak
City of Strongsville Prosecutor
614 West Superior Avenue, Suite 1310
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} Just two blocks from his house, defendant-appellant Germaney Johnson's vehicle ran out of gasoline. A city of Strongsville snow plow pushed his vehicle into the center turn lane of a four-lane road and Johnson's wife and one of their two children went to get gasoline. Johnson and the other child remained in the vehicle with his hazard lights activated. As police officers approached to assist, they "ran the plate" and learned that the vehicle had been registered to a woman (Johnson's wife). Claiming that "we don't know what we have until we can start figuring out who's in the car," the police asked Johnson to show them his driver's license. Johnson explained that he had run out of gasoline and asked why he needed to show his license. The wife and child returned with gasoline and she identified herself, but the police, having obtained backup, physically removed Johnson from the vehicle and arrested him when he refused their repeated requests to produce his driver's license. The police then discovered that Johnson had a permit to carry a concealed firearm. They searched the vehicle and found a firearm in the center console. On these facts, a jury found Johnson guilty of failure to display a driver's license, resisting arrest, carrying a concealed weapon, and obstructing official business.

**{¶2}** On appeal, Johnson broadly raises issues relating to the court's jurisdiction over the case, the sufficiency of the evidence supporting the various counts, and juror misconduct. We agree that there was insufficient evidence to find Johnson guilty of resisting arrest, carrying a concealed weapon, and obstructing official business and vacate those convictions.

## I. Failure to Display Driver's License

**{¶3}** Johnson complains that there was insufficient evidence to prove the charge of failure to display a driver's license because he was not operating a vehicle at the time the police asked him to display the license.

**{¶4}** R.C. 4507.35(A) states in part:

> The operator of a motor vehicle shall display the operator's driver's license, or furnish satisfactory proof that the operator has a driver's license, upon demand of any peace officer or of any person damaged or injured in any collision in which the licensee may be involved. When a demand is properly made and the operator has the operator's driver's license on or about the operator's person, the operator shall not refuse to display the license.

**{¶5}** Johnson does not dispute that he failed to display his driver's license upon demand. He simply maintains that he was not operating the vehicle at the time the police approached him because his vehicle had run out of gasoline.

**{¶6}** The word "operate" is undefined in R.C. Chapter 4507. However, it is defined for purposes of R.C. Chapter 4511 and 4513 as "to cause or have caused movement of a vehicle, streetcar, or trackless trolley." R.C. 4511.01(HHH). This definition is consistent with the view that "[b]oth operation and physical control are terms which have been broadly construed in keeping with the purpose of state and municipal

driving under the influence laws * * *." *Lakewood v. Zingale*, 8th Dist. Cuyahoga No. 88498, 2007-Ohio-2779, ¶ 16.

{¶7} Johnson's wife testified that he had been driving the vehicle when it ran out of gasoline. And to dispel the idea that a vehicle without gasoline was incapable of being operated, Johnson's wife testified that when the vehicle did run out of gasoline, a city service truck came by and pushed the vehicle while Johnson steered it. The wife's testimony was sufficient evidence that Johnson was the operator of the vehicle.

## II. Obstructing Official Business

{¶8} Johnson complains that the obstructing official business charge was redundant to the failure to display a driver's license charge.

{¶9} R.C. 2921.31(A) states that no person,

> without privilege to do so and with purpose to prevent, obstruct, or delay
> the performance by a public official of any authorized act within the public
> official's official capacity, shall do any act that hampers or impedes a public
> official in the performance of the public official's lawful duties.

{¶10} The city maintains that the basis for the obstruction of official business charge was that police were "unable to issue a lawful citation because [Johnson] questioned the officers and ignored their lawful orders for him to identify himself." Appellee's brief at 9. This argument incorrectly assumes that grounds for issuing a citation for failing to display a driver's license existed before Johnson questioned why he had to display his driver's license. In fact, it was his repeated questioning of the need to

show his license that caused the police to conclude that he was in violation of R.C. 4507.35(A). That occurred before grounds to issue the citation for refusing to display a driver's license, so it could not form the basis for a conviction on obstructing official business.

### III. Resisting Arrest

{¶11} The city charged Johnson with resisting arrest in violation of R.C. 2921.33(B). That section states: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer." "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶12} The city failed to offer sufficient evidence that Johnson caused physical harm to a police officer. One of the officers testified that as they tried to arrest Johnson, he felt "a twinge in my neck." There was no testimony that the officer suffered the "twinge" as a direct result of any physical contact with Johnson, so the state did not prove that Johnson caused physical harm to the officer. *State v. Fussell*, 8th Dist. Cuyahoga No. 95906, 2011-Ohio-4815, ¶ 15. In any event, the "twinge" the officer felt did not result in him seeking medical treatment or missing any time off from work and did not qualify as "physical harm" sufficient to establish resisting arrest under R.C. 2923.33(B).

{¶13} Additionally, although the officers told Johnson on more than one occasion that they could arrest him if he failed to show his driver's license, the transcript of the

trial indicates that Johnson was not actually arrested until after the officers had secured him in the police car. One officer testified that as the police were pulling Johnson from his car, they were still saying to him, "'Hey, give us the driver's license.'" Because Johnson still refused to do so, the officer testified that "[w]e had to get him out at this point, so we made a decision he's going to be arrested." However, at no point during this time did the officers actually place Johnson under arrest, tell him that he was under arrest, or read him his rights. The officer went on to testify that "the next thing we'd do is we want to put handcuffs on him. So we want to get — *effectively arrest him*, * * * to avoid any injuries to him, him and ourselves * * *." (Emphasis added.) Finally, after Johnson was handcuffed and in the police car, the officer testified that "[w]e make a decision to make an arrest." This testimony also demonstrated that the city's evidence was insufficient to sustain a conviction for resisting arrest.

IV. Carrying a Concealed Weapon

{¶14} Although Johnson had a permit to carry a concealed weapon, the city charged him with carrying a concealed weapon under R.C. 2923.12(B)(1). That section requires a person "stopped for law enforcement purposes and who is carrying a concealed handgun" to "promptly inform any law enforcement officer who approaches the person after the person has been stopped that the person has been issued a concealed handgun license and that the person then is carrying a concealed handgun." Johnson argues that he was not stopped for a law enforcement purpose because he had in fact been stopped before the police arrived because his vehicle ran out of gasoline.

{¶15} The Revised Code does not define the phrase "law enforcement purpose," but this case does not require us to provide its meaning in any definitive way. The police testified that their encounter with Johnson did not occur because they were enforcing any laws. They saw a stranded vehicle and claimed to be offering assistance. In fact, one of the officers conceded in his testimony that at the time he approached Johnson's stranded vehicle, there was "no law" that he was intending to enforce. But even if we were to construe the phrase "law enforcement purpose" broadly to encompass situations like this one where the police approach a vehicle for safety reasons, Johnson was not "stopped" by the police. The statute is clear. R.C. 2923.12(B)(1) only requires an individual who is carrying a concealed handgun, has a license to do so, and who is "*stopped* for law enforcement purposes" to promptly inform an officer who approaches *after the person has been stopped* of the existence of the handgun. (Emphasis added.)

## V. Miscellaneous

### A. Jurisdiction

{¶16} Johnson argues that the court should have dismissed the complaints against him because they were not filed in the name of an individual, but in the name of the municipality in which his offenses occurred. We reject this argument because it has long been established that criminal prosecutions are brought in the name of the state or municipality in which they occur and not in the name of the person making the complaint. *E. W. Scripps Co. v. Fulton*, 100 Ohio App. 157, 125 N.E.2d 896 (8th Dist.1955), paragraph two of the syllabus; *Hilton v. Morse*, 2 Ohio Dec.Rep. 292, 317 (C.P.1860).

This rule is so well established that it would have been futile for defense counsel to seek dismissal of the charges on that basis and counsel's failure to seek dismissal did not deprive Johnson of the effective assistance of counsel. *State v. Allen*, 8th Dist. Cuyahoga No. 90552, 2008-Ohio-5251, ¶ 18. And to the extent that some of the charges against Johnson were misdemeanors for which no jail time was authorized, there is no claim of ineffective assistance of counsel. *Lockland v. Plotsker*, 1st Dist. Hamilton No. C-130563, 2014-Ohio-2173, ¶ 4.

## B. Right to Confrontation

{¶17} Johnson next complains that two officers who signed documents submitted to the court did not testify, thus violating his right to confront witnesses in violation of the Sixth Amendment to the United States Constitution.

{¶18} Johnson does not identify the documents submitted by the two officers, but he is apparently referring to the complaints filed in this case (one officer filed the failure to display a license charge; another officer filed the remaining charges). Although neither officer testified at trial, they were not required to testify because the city presented testimony from three other officers who witnessed the offenses. Johnson was able to cross-examine those witnesses, so his right to confront witnesses was not violated.

## C. Jury Pool

{¶19} Johnson's case was tried in the Berea Municipal Court. After a jury was selected, Johnson objected to its composition, complaining that a jury pool containing

only persons within the territorial jurisdiction of the court did not reflect the racial diversity of Cuyahoga County.

{¶20} We note at the outset that Johnson makes no argument that potential jurors were selectively excluded from the jury. Nor has he offered any statistical data to support his claim that the jury, as selected, was not representative of the population within the court's territorial jurisdiction. *State v. Stockton*, 3d Dist. Shelby No. 17-96-15, 1997 Ohio App. LEXIS 2019, at 10 (May 5, 1997).

{¶21} "Municipal courts are created by statute, R.C. 1901.01, and their subject-matter jurisdiction is also set by statute. A municipal court in Ohio has jurisdiction over misdemeanors occurring within its territorial jurisdiction." *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 11, citing R.C. 1901.20(A)(1). Because a court has authority only over persons in a municipal court's jurisdiction, the court in this case had no ability to widen the pool of potential jurors to persons who were outside its jurisdiction. *State v. Fendrick*, 77 Ohio St. 298, 299, 82 N.E. 1078 (1907); *State v. Henning*, 83 Ohio App. 445, 78 N.E.2d 588 (10th Dist.1948).

### D. Juror Coercion

{¶22} Finally, Johnson complains that the court coerced a juror to change his verdict.

{¶23} The juror in question had been singled out by the other jurors during deliberations for getting "agitated" to the point that they felt uncomfortable. The court spoke to the jurors collectively and addressed the matter. It told the juror that there

should be "mutual respect" in the jury room and that "nobody's asking you to give up your strongly held beliefs and feelings about anything. If you can't, you can't and then we have what's called a hung jury, okay." The jury continued its deliberations, but later told the court that it had a question concerning the meaning of the word "promptly" meant for purposes of the carrying a concealed weapon charge. The juror in question specifically told the court that he had an opinion on what the carrying a concealed weapon statute required, but the court cut off the juror and told him to "give your opinion back in the jury room." The juror appeared to reply that further discussion "won't work" and that "I'd rather have you fire me and let me go home because I'm not changing my attitude on this." The court told the juror that "I don't want you to change your attitude." When the juror asked if he could speak to the court in private, the court, juror, and counsel for both parties had an off-the-record discussion. When the court went back on the record, it told the jury:

> All right. Under the circumstances, I understand that there's some difficulty here. And I'm not gonna get into it anymore deeper, but I want you to go back and try the [sic] talk amongst yourself and see if you can resolve your differences and come up with a conclusion, unanimous verdict, okay. And then I think it's important for the process that you do that. I understand there's some ying and yang here, so to speak, but it's important to the process that we come to a resolution if we can and get these — these cases done, okay. Counsel, anything else at this point?

{¶24} The jury returned to deliberations and announced that it could not reach a unanimous verdict on one of the four counts. The court read the jury the *Howard* charge for deadlocked jurors. The jury resumed deliberations. It then returned a unanimous verdict of guilty on all charges.

{¶25} There is nothing in the record to indicate that the court coerced the juror into changing his mind. The off-the-record discussion occurred in the presence of defense counsel, with no objection made after-the-fact. On this basis alone, Johnson has failed to exemplify any error. To the extent there is a record, it is replete with the court's insistence that the juror could stick with his position and that "I don't want to change your attitude." The juror apparently changed his opinion, but for reasons known only to that juror. Nevertheless, the fact remains that the court did nothing to coerce that change of opinion.

{¶26} In conclusion, we affirm the conviction for failing to display a driver's license. We reverse the convictions for obstructing official business, resisting arrest, and carrying a concealed weapon.

{¶27} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY J. BOYLE, J., CONCURS;
KATHLEEN ANN KEOUGH, A.J., CONCURS   IN PART AND DISSENTS IN PART
(WITH SEPARATE OPINION)

KATHLEEN ANN KEOUGH, A.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶28}   I respectfully concur in part and dissent in part with the majority's decision.  I agree with the majority that the obstruction of official business conviction should be reversed outright and the failure to display a driver's license should be affirmed.  However, I would reverse Johnson's conviction for resisting arrest in violation of R.C. 2921.33(B), but find him guilty of the lesser included offense of resisting arrest in violation of R.C. 2921.33(A) where the element of harm is not necessary.  Additionally, I would affirm Johnson's conviction for carrying a concealed weapon.

{¶29} Pertaining to the resisting arrest conviction, the majority concludes that the city failed to offer sufficient evidence that Johnson caused physical harm to the police officer.  I agree.  However, I would find that sufficient evidence was presented to convict Johnson of the lesser included offense of resisting arrest in violation of R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."  *See Middleburg Hts. v. Lasker*,

8th Dist. Cuyahoga No. 103903, 2016-Ohio-5522, ¶ 24, citing *Fussell*, 8th Dist. Cuyahoga No. 95906, 2011-Ohio-4815, at ¶ 20 (resisting arrest, in violation of R.C. 2921.33(A), is a lesser included offense of resisting arrest in violation of R.C. 2921.33(B)).

{¶30} In this case, the evidence showed that Johnson was moving his arms and making motions that prohibited the officers from placing handcuffs on him and that he would not comply with officers' commands to stop resisting arrest. Accordingly, I would modify his conviction to the second-degree misdemeanor of resisting arrest in violation of R.C. 2921.33(A). *Lasker* at ¶ 29 (appellate court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial).

{¶31} Additionally, I would affirm Johnson's conviction for carrying a concealed weapon. First, Johnson was obligated under R.C. 2923.12(B)(1) to immediately inform the officers of his CCW permit and the presence of the firearm in the center console once the officers approached the vehicle even though one of the officers testified that there was "no law" that he was intending to enforce. I would not read the phrase "stopped for a law enforcement purpose" as narrowly as the majority. A law enforcement officer's duties encompass more than just enforce laws — the duties also include nonenforcement responsibilities, including safety and welfare checks and consensual encounters. I read "stopped for law enforcement purposes" broadly, that once an individual whether on foot or in a vehicle and who is carrying a concealed weapon, is stopped by a law enforcement

officer, that individual has an obligation under R.C. 2923.12 to immediately inform an officer of the firearm and permit. *See State v. White*, 8th Dist. Cuyahoga No. 92229, 2009-Ohio-5557, ¶ 14 (individual seated in parked car required to inform the approaching officer of the presence of the handgun and required permit under R.C. 2923.12(B)(1)).

**{¶32}** In this case, the officers approached the stranded vehicle in the middle of the street to check on the safety of the occupants of the vehicle and offer assistance. However, once it was discovered that the registered owner was female and the driver was male, the officers then attempted to discern the identification of the driver. The consensual encounter escalated once Johnson refused to provide his identification or identifying information. Notwithstanding the fact that Johnson should have informed the officers immediately, once the encounter escalated and Johnson was being arrested, Johnson was required to inform the officers of his CCW permit and the firearm present inside the vehicle.

**{¶33}** Viewing the evidence in the light most favorable to the prosecution, I would find sufficient evidence to support Johnson's conviction for carrying a concealed weapon in violation of R.C. 2923.12(B)(1).