[Cite as *State v. Hartfield*, 2022-Ohio-2243.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| DOUGLAS HARTFIELD | : | Case No. 2021CA30 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 2019CR470



JUDGMENT:                        Affirmed/Reversed in Part and
                                 Remanded



DATE OF JUDGMENT:                June 29, 2022




APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JENNY WELLS                           APRIL F. CAMPBELL
20 South Second Street                46½ North Sandusky Street
Fourth Floor                          Delaware, OH  43015
Newark, OH  43055

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant, Douglas Hartfield, appeals his March 23, 2021 convictions and sentence by the Court of Common Pleas of Licking County, Ohio. Plaintiff-Appellee is state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On July 3, 2019, the Licking County Grand Jury indicted appellant on two counts of rape in violation of R.C. 2907.02(A)(1)(c) (victim substantially impaired) and 2907.02(A)(2) (force), and one count of sexual battery in violation of R.C. 2907.03.  Said charges arose from an incident involving appellant and B.P., a woman appellant had met at a wedding reception the night of the incident.

{¶ 3}  A jury trial commenced on February 9, 2021. The trial court found appellant guilty of one count of rape (victim substantially impaired) and the sexual battery count, and not guilty of the remaining rape count (force).  By judgment of sentence filed March 23, 2021, the trial court sentenced appellant pursuant to the Reagan Tokes Act to a minimum mandatory term of six years in prison and an indefinite maximum term of nine years in prison.

{¶ 4}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 5}  "THE TRIAL COURT PLAINLY ERRED BY FAILING TO INSTRUCT THE JURY THAT IT MUST UNANIMOUSLY AGREE ON THE SAME SPECIFIC INCIDENT OF SEX ABUSE WITHIN EACH COUNT IN THE INDICTMENT AGAINST DOUGLAS HARTFIELD, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS OF LAW, A FAIR

TRIAL, JURY UNANIMITY, AND THE DOUBLE JEOPARDY PROTECTIONS PURSUANT TO THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

II

{¶ 6} "DOUGLAS HARTFIELD'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

III

{¶ 7} "DOUGLAS HARTFIELD'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

IV

{¶ 8} "AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO."

V

{¶ 9} "THE TRIAL COURT ERRED BY FAILING TO MERGE HARTFIELD'S SEXUAL RAPE AND SEXUAL BATTERY OFFENSES, IN VIOLATION OF THE DOUBLE

JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

VI

{¶ 10} "HARTFIELD RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

{¶ 11} We will address the assignments of error out of order.

II

{¶ 12} In his second assignment of error, appellant claims his convictions were based on insufficient evidence.  We disagree.

{¶ 13} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 14} Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(c) and sexual battery in violation of R.C. 2907.03(A)(2) which state the following, respectively:

[Rape] (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender

but is living separate and apart from the offender, when any of the following

applies:

(c) The other person's ability to resist or consent is substantially

impaired because of a mental or physical condition or because of advanced

age, and the offender knows or has reasonable cause to believe that the

other person's ability to resist or consent is substantially impaired because

of a mental or physical condition or because of advanced age.

[Sexual battery] (A) No person shall engage in sexual conduct with

another, not the spouse of the offender, when any of the following apply:

(2) The offender knows that the other person's ability to appraise the

nature of or control the other person's own conduct is substantially impaired.

{¶ 15} R.C. 2907.01(A) defines "sexual conduct" as follows:

"Sexual conduct" means vaginal intercourse between a male and

female; anal intercourse, fellatio, and cunnilingus between persons

regardless of sex; and, without privilege to do so, the insertion, however

slight, of any part of the body or any instrument, apparatus, or other object

into the vaginal or anal opening of another. Penetration, however slight, is

sufficient to complete vaginal or anal intercourse.

{¶ 16} The jury heard from seven prosecution witnesses.

{¶ 17} Several witnesses testified to B.P.'s intoxicated state at a wedding reception. B.P. was described as "pretty drunk," "having a hard time standing up," "swaying a lot," "intoxicated," "slurring words," "unsteady on her feet," and "vomited." T. at 172, 202, 219. Appellant offered to take B.P. home ten to fifteen times. T. at 203-204. Because the "designated drivers" had not returned yet and B.P. was getting sick, B.P.'s cousin acquiesced to appellant taking B.P. home. T. at 204-205.

{¶ 18} B.P. testified she was intoxicated and sick at the wedding reception. T. at 308. She was "dizzy," "lightheaded," "stumbling," and everything was "kind of shifting." *Id.* It was decided that appellant would drive B.P. home. T. at 311. B.P. had never met appellant prior to the reception. T. at 306. B.P.'s cousin helped her to appellant's car and on the drive home, B.P. vomited in the vehicle. T. at 311-313. After arriving home, B.P. immediately took a shower and during the shower, appellant entered and got in behind her. T. at 320. B.P. exited the shower, was very dizzy, flopped on her "bed face down" naked, and passed out "for a short time." T. at 321. When she came to, she realized she was "on all fours" and appellant had his penis in her anus. T. at 323. She then recalls appellant's penis in her face and she vomited all over the bed. T. at 324. Appellant led her to the bathroom to shower off, then led her back to the bed where he placed his penis inside her anus again and then in her mouth whereupon he ejaculated. T. at 325. On and off throughout the evening, B.P. was passing out and coming to. When B.P. woke up the next morning, she went to the hospital and consented to a sexual assault examination. T. at 331-332. The following day, B.P. spoke to police. T. at 334.

{¶ 19} The nurse who conducted B.P.'s examination testified to the procedures used in obtaining evidence and the chain of custody. T. at 244-253; State's Exhibit 3.

{¶ 20} The forensic scientist who examined the sexual assault examination kit testified male DNA was found in the rectal swabs, but it was it inconclusive for appellant "due to insufficient data." T. at 393-394, 414-415. Appellant was not excluded as a contributor nor was he included. T. at 394.

{¶ 21} In reviewing the evidence in a light most favorable to the prosecution, we find sufficient evidence was presented from which a jury could conclude beyond a reasonable doubt that appellant committed the offenses of rape and/or sexual battery.

{¶ 22} Assignment of Error II is denied.

III

{¶ 23} In his third assignment of error, appellant claims his convictions were against the manifest weight of the evidence. We disagree.

{¶ 24} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In *Thompkins, supra,* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party

having the burden of proof will be entitled to their verdict, if, on weighing the

evidence in their minds, they shall find the *greater amount of credible*

*evidence* sustains the issue which is to be established before them.  Weight

is not a question of mathematics, but depends on its *effect in inducing*

*belief*."  (Emphasis sic.)

{¶ 25} "Although we review credibility when considering the manifest weight of the

evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State*

*v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *State v. DeHass,*

10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  We note the

granting of a new trial "should be exercised only in the exceptional case in which the

evidence weighs heavily against the conviction."  *Martin, supra,* at 175.

{¶ 26} The state's evidence is set forth above in Assignment of Error II.  Any

claimed inconsistencies in B.P.'s testimony were vigorously challenged on cross-

examination.  Although appellant exercised his right to not testify at trial, the jury heard

from him via recorded telephone calls.  State's Exhibit 9.  Appellant told B.P. he was

"concerned about what you might rem - might think happened or whatever."  He told B.P.

they were both covered in vomit and he had to help her get into her shower as he was

very concerned for her safety.  He stated she could not even get into the house or get

upstairs by herself; she was "extremely intoxicated" and falling down.  She had vomited

on both of them.  He was concerned he would be accused of something more since they

both showered to wash off the vomit.  When B.P. asked him why he could not have waited

to enter the shower until after she got out, he denied getting in the shower behind her.

He then stated, "I stuck my leg in there" because "I had to rinse off too." He told B.P. "nothing more happened other than the fact that I washed off and you washed off." He repeatedly denied engaging in any kind of sexual conduct with her. He told B.P. she was confused about what happened. He claimed, "if there's any DNA involved in anything," it was his vomit because he had vomited on her.

{¶ 27} In reviewing the record, we find the jury could have found B.P.'s testimony of the incident, the observations of witnesses who testified to B.P.'s intoxication, and the male DNA found on the rectal swabs to be more persuasive than appellant's denials in the telephone calls. Based on the facts in the record, we cannot say the jury lost its way nor can we say this is an exceptional case requiring reversal as against the manifest weight of the evidence. *State v. Virostek,* 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 58.

{¶ 28} Assignment of Error III is denied.

I

{¶ 29} In his first assignment of error, appellant claims the trial court erred in failing to instruct the jury that it must unanimously agree on the same specific incident of sexual conduct within each count in the indictment. We disagree.

{¶ 30} A criminal complaint/arrest warrant filed June 20, 2019, alleged appellant forced a victim to engage in anal intercourse and fellatio while the victim was substantially impaired.

{¶ 31} In an indictment filed July 3, 2019, appellant was indicted on two counts of rape in violation of R.C. 2907.02(A)(1)(c) (victim substantially impaired) and (A)(2) (force) and one count of sexual battery in violation of R.C. 2907.03. Each separate count of the

indictment alleged appellant engaged in sexual conduct with another. However, the indictment did not identify which alleged act of sexual conduct, i.e., anal intercourse or fellatio, related to which count.

{¶ 32} A bill of particulars was filed August 13, 2019, and an amended bill of particulars was filed August 28, 2020.[1] The second through fifth paragraphs of the amended bill of particulars identified the date, venue, victim, and conduct of appellant which was alleged to have constituted the three offenses as set out below in pertinent part:

On June 15, 2019, [B.P.] attended a wedding reception in Licking County, Ohio. The Defendant, Douglas Hartfield was also present at the reception. Over the course of the reception the victim became extremely intoxicated, to the point that she could not walk without assistance. The Defendant, who had just met the victim that night and had been giving the victim alcohol, offered to take the victim to her home, located on * * * in the City of Newark, Licking County, Ohio. When they arrived at the victim's home, the Defendant helped the victim into her home. When the victim was in the shower, the Defendant entered the shower also. The victim went into her bedroom. Once the victim laid down on her bed, the Defendant forced

---

[1]There is no difference between these two filings as to what specific conduct is alleged. The amendment clarified the language of appellant's denial in a recorded phone call with victim, the potential maximum sentence in count two, and appellant's potential designation as a sexual offender if convicted.

himself on the victim, putting his penis into her anus and then forcing his penis into her mouth.

As a result, the Defendant is charged in Count 1 of the Indictment with Rape a violation of Revised Code section 2907.02(A)(1)(c) [victim substantially impaired]. This is a felony of the 1st degree which carries a minimum prison term of three (3) years with an indefinite maximum prison term of sixteen and one half (16.5) years and a maximum fine of $20,000.

He is charged in Count 2 of the Indictment with Rape a violation of Revised Code section 2907.02(A)(2) [force]. This is a felony of the 1st degree which carries a minimum prison term of three (3) years with an indefinite maximum prison term of sixteen and one half (16.5) years and a maximum fine of $20,000.

He is charged in Count 3 of the Indictment with Sexual Battery a violation of Revised Code section 2907.03(A)(2). This is a felony of the 3rd Degree which carries a maximum prison term of five (5) years and a maximum fine of $10,000.00.

{¶ 33} This language accused appellant of committing two distinct types of sexual conduct, anal intercourse and fellatio, by force while the victim was substantially impaired. However, just as in the indictment, the amended bill of particulars did not specify the number of acts appellant was accused of committing. Further, the language related all the alleged acts to all three counts. Appellant was put on notice he had to defend against

all alleged acts in all three offenses charged.  In other words, the state sought to prove sexual conduct by any or all of the alleged acts in all three charged offenses.

{¶ 34} During opening argument, the prosecutor told the jury the victim will recall that appellant "penetrated her anus on two occasions with his penis and put his penis in her mouth on two occasions, as well."  T. at 149.

{¶ 35} During trial, the jury heard B.P.'s testimony cited above.  She testified to one act of anal intercourse and one act of attempted fellatio prior to the second shower and one act of anal intercourse and one act of fellatio after the shower.

{¶ 36} In the final jury instructions given to the jury, filed February 11, 2021, the trial court instructed the jury on the three counts.  Under Count 1, rape while the victim was substantially impaired, the trial court defined sexual conduct, anal intercourse, fellatio, and substantially impaired.  Under Count 2, rape by force, the trial court defined sexual conduct, anal intercourse, fellatio, purposely, force, and resistance.  Under Count 3, sexual battery, the trial court defined sexual conduct, anal intercourse, fellatio, spouse, knowingly, and substantially impaired.  Under "MULTIPLE COUNTS" the trial court instructed the following:

> 3. CONSIDER COUNTS SEPARATELY. The charges set forth in each count in the indictment constitute a separate and distinct matter.  You must consider each count and the evidence applicable to each count separately and you must state your finding as to each count uninfluenced by your verdict as to any other count.  The defendant may be found guilty or not guilty of any one or all the offenses charged.

{¶ 37} The trial court instructed the jury that their "verdict as to each count, whether it is guilty or not guilty, must be unanimous."

{¶ 38} The jury found appellant guilty of Count 1, rape while the victim was substantially impaired, and Count 3, sexual battery. The jury found appellant not guilty of Count 2, rape by force. The verdict forms did not reference any specific acts to the corresponding counts.

{¶ 39} In his appellate brief at 4, appellant argues the trial court should have instructed the jury "that it must agree on the specific incident of sexual activity within each count in the indictment. Otherwise, there was nothing to prevent the jury from convicting Hartfield by only agreeing that either of the sexual activity had been committed, within each count, although not necessarily agreeing as to which one."

{¶ 40} Appellant concedes an objection was not made to the jury charge as required under Crim.R. 30(A). An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 41} In support of his argument, appellant cites Crim.R. 31(A) which requires a jury verdict to be unanimous, and cites the case of *State v. Gardner,* 118 Ohio St.3d 420,

2008-Ohio-2787. We note appellee failed to address or even mention the *Gardner* case in its appellate brief.

{¶ 42} In *Gardner,* the Supreme Court of Ohio analyzed the issue of juror unanimity in the context of a conviction for aggravated burglary. In part, the state was required to prove a trespass into a home with the purpose to commit any criminal offense inside. The issue was "whether the jurors must agree unanimously as to which criminal offense a defendant intended to commit during a burglary." *Id.* at ¶ 37. The *Gardner* court noted the following at ¶ 38:

> Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied. *Richardson v. United States* (1999), 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985. Applying the federal counterpart of Crim.R. 31(A), *Richardson* stated that a "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime."

{¶ 43} In analyzing the issue, the *Gardner* court explained the following at ¶ 48-51:

> In determining whether the state has impermissibly interfered with a defendant's Crim.R. 31(A) right to juror unanimity and the due process right to require that the state prove each element of the offense beyond a

reasonable doubt, the critical inquiry is whether the case involves "alternative means" or "multiple acts."

" ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged.  Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means.  In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.

" ' "In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged.  In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." ' " (Footnote omitted.)  *State v. Jones* (2001), 96 Hawai'i 161, 170, 29 P.3d 351, quoting *State v. Timley* (1994), 255 Kan. 286, 289–290, 875 P.2d 242, quoting *State v. Kitchen* (1988), 110 Wash.2d 403, 410, 756 P.2d 105.

We find the distinction between "alternative means" cases and "multiple acts" cases to be a meaningful one and one that is consistent with our precedent.  *Davis, McKnight,* and *Thompson* illustrate our analysis in alternative-means cases, while our decision in *State v. Johnson* (1989), 46

Ohio St.3d 96, 545 N.E.2d 636, recognizes that different standards apply in a multiple-acts case.

{¶ 44} The *Gardner* court listed *State v. Thompson,* 33 Ohio St.3d 1, 514 N.E.2d 407 (1987), as an alternative means case. The *Gardner* court first discussed the *Thompson* case at ¶ 43-44:

Earlier, we had reached a similar conclusion in *State v. Thompson* (1987), 33 Ohio St.3d 1, 514 N.E.2d 407, an aggravated-murder case in which the state alleged that the murder had been committed in the course of rape. There, we rejected the appellant's contention that in order to ensure a unanimous verdict, the trial court was required to instruct the jury that it needed to agree as to whether he had committed a vaginal rape, an anal rape, or both. Id. at 11, 514 N.E.2d 407.

We held that Ohio's rape statute required a showing of "sexual conduct" and that both vaginal intercourse and anal intercourse satisfied the statutory definition of "sexual conduct." We concluded that jurors needed to find only that sexual conduct had occurred in order to find the aggravating circumstance of rape and that because the statute did not require a specific finding as to the *type* of rape, the trial court did not err by refusing to instruct the jury that it must make that finding. Id., 33 Ohio St.3d at 11, 514 N.E.2d 407. We concluded, "The fact that some jurors might have found that appellant committed one, but not the other, type of rape in

no way reduces the reliability of appellant's conviction, because a finding of either type of conduct is sufficient to establish the fact of rape in Ohio."  Id.

{¶ 45} The *Gardner* court revisited the *Thompson* case in ¶ 65:

> Similarly, we do not require all jurors to agree whether a defendant raped a victim orally, vaginally, or anally, because all three constitute "sexual conduct" in violation of the rape statute.  In such cases, there is no violation of the jury unanimity rule as long as all of the jurors agree that there was sufficient penetration to satisfy the "sexual conduct" element of the crime of rape.  *Thompson,* 33 Ohio St.3d at 11, 514 N.E.2d 407.

*Accord State v. Miller,* 7th Dist. Mahoning No. 17 MA 0120, 2018-Ohio-3430, ¶ 35-36; *See State v. Brown,* 8th Dist. Cuyahoga No. 106582, 2019-Ohio-1235, ¶ 29.

{¶ 46} Based on our review of the cited case law, the rape and sexual battery statutes, the evidence presented to the jury, and the jury instructions, we conclude this is an alternative means case rather than a multiple acts case.  As explained in *Gardner,* the jury was not required to agree whether appellant committed the offenses by anal intercourse or fellatio because each is an alternative form of "sexual conduct," an element of rape and sexual battery.

{¶ 47} Upon review, we find the trial court did not err in failing to instruct the jury that it must unanimously agree on the same specific incident of sexual conduct within each count in the indictment.

{¶ 48} Assignment of Error I is denied.

V

{¶ 49} In his fifth assignment of error, appellant claims the trial court erred in failing to merge the rape and sexual battery convictions.  We agree.

{¶ 50} We note an objection was not made to the sentence, so our review is limited to plain error.  *State v. Long, supra.*

{¶ 51} Pursuant to R.C. 2941.25(A): "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."  As explained by the Supreme Court of Ohio in *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?  An affirmative answer to any of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered.

{¶ 52} As noted above, B.P. testified to two acts of anal intercourse and at a minimum, one act of fellatio.  The acts of anal intercourse and fellatio are two distinct acts and are not allied offenses.  However, the indictment was silent as to any specific acts, and the bill of particulars and the amended bill of particulars describe one forced act of anal intercourse and one forced act of fellatio upon the victim who was extremely intoxicated.  The jury found appellant guilty of two counts involving sexual conduct and substantial impairment after hearing about three alleged acts of sexual conduct.  The verdict forms did not indicate which act of sexual conduct corresponded to rape and which one corresponded to sexual battery.  No interrogatories were given to the jury.  We did not find this distinction to be of consequence for jury unanimity given the alternative means theory discussed above in Assignment of Error I.  The jury found the element of sexual conduct was proven by one and/or two types of sexual conduct and the victim was substantially impaired (Counts 1 and 3).

{¶ 53} However, we do find the above noted lack of specificity to be of consequence for purposes of sentencing.  Nothing in the indictment, amended bill of particulars, jury instructions or verdict forms differentiated the alleged conduct charged in Count 1 and Count 3.  We are unable to determine which act of sexual conduct the jury ascribed to each count.  Did the jury use the same sexual conduct to convict appellant of both offenses?  We do not know.  All we know is the jury found appellant had engaged in some type of sexual conduct.

{¶ 54} In its appellate brief at 21, appellee cites our decision in *State v. Williams,* 5th Dist. Fairfield No. 2019 CA 00050, 2021-Ohio-797, ¶ 37, for the proposition that

"[d]ifferent sexual acts occurring in the same encounter are not allied offenses of similar import." In *Williams,* the defendant was charged with two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A). However, each count was defined by separate and distinct acts of sexual conduct. The verdict form for Count 1 referenced vaginal intercourse and the verdict form for Count 3 referenced anal intercourse. There is no question the *Williams* jury found the defendant guilty of vaginal intercourse in Count 1 and anal intercourse in Count 3.

{¶ 55} Here, there is no way to determine if the separate convictions relate to distinct acts of sexual conduct. Under the facts of this case, the elements of rape in Count 1 and sexual battery in Count 3 as set out in ¶ 14 above are the same. Appellant engaged in sexual conduct with another, not his spouse, who was unable to perceive of the conduct or resist the conduct because of substantial impairment. We find no difference between these two charged offenses and because distinct acts of sexual conduct are not assigned to each count, appellant cannot be punished separately. As a result, we find the trial court should have merged the rape and sexual battery for sentencing.

{¶ 56} Assignment of Error V is granted.

IV

{¶ 57} In his fourth assignment of error, appellant challenges his sentence relative to the Reagan Tokes Act, codified in R.C. 2967.271.

{¶ 58} As this court recently stated in *State v. Householder,* 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, ¶ 6:

For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. *See, e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

{¶ 59} Assignment of Error IV is denied.

VI

{¶ 60} In his sixth assignment of error, appellant claims he was denied the effective assistance of counsel. We disagree.

{¶ 61} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.  Appellant must establish the following:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
>
> 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 62} Appellant argues his trial counsel failed to argue the Reagan Tokes Act was unconstitutional, failed to object when the trial court did not merge the rape and sexual battery sentences, and failed to request a jury instruction on jury unanimity on the same specific incident of sexual conduct for each count.  Each of these issues have been addressed above and two have been found to lack merit (Assignments of Error I and IV). With regard to the merger issue, we have reversed and remanded the case for resentencing (Assignment of Error V); therefore, the issue of ineffective counsel is moot.

{¶ 63} Assignment of Error VI is denied.

{¶ 64} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Wise, Earle, J.

Hoffman, P.J. and

Wise, John, J. concur.


EEW/db